**In re REINER.**

[Cite as *In re Reiner* (1991), 74 Ohio App.3d 213.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 58121, 58122 and 58481.

Decided May 21, 1991.

214

*Leona Reiner* and *Eric S. Reiner, pro se.*

*Monroe, Zucco & Kaselak, Donald K. Barclay* and *Jules N. Koach,* for appellee and cross-appellant.

---

JAMES D. SWEENEY, Judge.

Leona H. Reiner and Raphael A. Reiner were married in Texas on September 14, 1963. Mrs. Reiner was a professor of library science and Mr. Reiner was an Army major. One child was born, Eric Reiner, on September 3, 1964.

Following contested divorce proceedings, the District Court of Walker County, Texas, Twelfth Judicial District, granted Mr. Reiner a divorce on April 5, 1968. A division of assets was ordered, and Mrs. Reiner was awarded custody of Eric. Mr. Reiner was given visitation rights at reasonable times and places. He was to pay $250 a month in child support.

On June 20, 1968, Mrs. Reiner filed an application in the Cuyahoga County Court of Common Pleas, Juvenile Division, under R.C. 2151.23(A)(2) to determine custody of a child not a ward of another court. Judge John Toner issued an order on August 5, 1968, which granted Mrs. Reiner's motion, and continued the Texas custody and support orders and established a new visitation schedule. Mr. Reiner did not challenge the jurisdiction of the juvenile court.

From the beginning, there were problems with visitation. Mrs. Reiner alleged that Mr. Reiner was sexually abusing Eric; Mr. Reiner tried to obtain custody and a reduction in child support. After a certain point, Mrs. Reiner refused to comply with the visitation orders and was held in contempt. In addition, Mr. Reiner was not current with his child support payments.

Mrs. Reiner sought to restrict visitation to Cuyahoga County, enforce support, and receive a stay as to her contempt citation. The juvenile court denied her requests, and an appeal followed to this court, case No. 30468. By journal entry dated December 20, 1971, the orders of the juvenile court were affirmed in part and reversed in part. This court sustained the contempt finding against Mrs. Reiner, but held that the juvenile court erred when it conditioned Mr. Reiner's obligation to pay child support on Mrs. Reiner's purging herself of contempt and complying with the court's visitation order.

Notwithstanding the opinion of this court, Mrs. Reiner refused to allow Mr. Reiner to visit his son, and Mr. Reiner did not pay child support.

By 1971, Mrs. Reiner had obtained both Juris Doctor and Master of Law degrees. In June 1971, she and Eric moved to Jacksonville, Florida, where she was Director of the Jacksonville University Library. In 1973, she and

Eric moved to Missouri where she was a professor of law, and in 1977 they moved to Pittsburgh, Pennsylvania, where she was in private practice. Mrs. Reiner alleges that each time they moved, she sent a letter to Mr. Reiner inviting him to visit Eric at any reasonable time he was not in school. Mr. Reiner states that he never knew where his son was living.

In 1970, Mr. Reiner retired from the Army and received a teaching degree in 1972. Mr. Reiner went on to earn his Ph.D. and is vice president of academic services at Sam Houston State University.

In 1975, Eric entered private schools because, according to Mrs. Reiner, the public schools were not meeting his educational needs. Eric was accepted at the Massachusetts Institute of Technology ("MIT") and graduated at the age of eighteen. He then attended the University of California at Berkeley where he graduated at age twenty-one with a Ph.D. in chemical engineering.

In 1980, Mrs. Reiner returned to Cleveland to care for the disabled maternal grandparents. The maternal grandparents paid for Eric's undergraduate education at MIT, and for some of his postgraduate work. Eric and Mrs. Reiner have issued promissory notes to Mrs. Hudak, the maternal grandmother, for expenses which she provided for Eric from 1974 until he turned age twenty-one in 1983.

These proceedings began in juvenile court in August 1982, when Mrs. Reiner filed a motion to reduce child support arrearage to lump sum judgment, a motion requesting that she be allowed to proceed in forma pauperis ("IFP"), a motion requesting an order that Mr. Reiner pay college expenses, a motion to show cause for contempt, and a motion to quash outstanding warrants. Judge Betty Ruben denied the motion for college expenses, but quashed the bench warrants and allowed Mrs. Reiner to proceed IFP. On August 20, 1982, Mrs. Reiner filed a motion to modify child support, and Judge Ruben ordered all motions personally served on Mr. Reiner.

On August 27, 1982, Mrs. Reiner filed interrogatories and a request for production of documents, a motion for attorney fees for herself, and a memorandum in support of all motions. On November 12, 1982, she filed a motion to compel discovery.

On December 1, 1982, Mr. Reiner filed a motion to dismiss, alleging lack of personal and subject matter jurisdiction. Judge Ruben held a hearing on January 3, 1983. Judge Ruben never made a ruling on the pending motion to dismiss.

In June 1986, Mrs. Reiner filed an affidavit of prejudice against Judge Ruben with the Ohio Disciplinary Counsel. At some point, several of the judges of the juvenile division recused themselves from this case.

On January 28, 1987, Judge Kenneth A. Rocco referred this case to Referee Wayne Strunk to rule on all pending motions and to conduct any evidentiary hearings needed. On April 15, 1987, Referee Strunk, without hearing, issued recommendations on all pending motions. On August 24, 1987, Mrs. Reiner filed a motion to cite Mr. Reiner for contempt and other sanctions for failure to comply with discovery. Mrs. Reiner also filed a motion for declaratory judgment on September 23, 1987. On December 18, 1987, Judge Rocco issued his order. On January 7, 1988, Mrs. Reiner filed objections to this order.

Apparently, at some point after this, Mrs. Reiner filed another complaint with the Ohio Disciplinary Counsel.

On April 13, 1988, Referee Strunk filed a supplemental report which indicated that he was considering pursuit of criminal, civil, and ethical remedies against Mrs. Reiner, and that he was incapable of presiding at the final evidentiary hearing of this case.

On November 29, 1988, Judge Rocco signed an order affirming in part and modifying in part the April 13, 1988 report of Referee Strunk. The order makes no reference to the status of Referee Strunk. This order was not journalized until June 15, 1989, which is also the date of the juvenile court's final judgment.

On December 19, 1988, Referee Strunk held a hearing on the pending motions. At the hearing, the referee held Mr. Reiner in contempt for failure to comply with a subpoena *duces tecum*, and for failure to comply with a previous discovery order. As a sanction, he did not allow Mr. Reiner's attorney to participate in the hearing.

Referee Strunk found an arrearage of $46,500, and found that the accumulated interest on that arrearage was $44,143.88. Further, he recommended the amount of child support be increased from $250 a month to $652 a month from the time of filing of the motion to modify child support to the time Eric reached age twenty-one. He also recommended that Mr. Reiner pay an additional $20,874 for Eric's college and graduate school expenses. He recommended a lump sum judgment against Mr. Reiner in the amount of $125,989.88. Both parties contest these findings.

On December 29, 1988, Mrs. Reiner sought to be admitted *pro hac vice* on this case retroactive to August 1982. This motion was denied by Referee Strunk and upheld by Judge Rocco.

It is the orders, findings and recommendations of Referee Strunk, as contained in his report and supplemental report of March 28, 1989, that serve as the basis for the juvenile court's judgment entry of June 15, 1989. It is from that judgment that the parties have appealed.

On appeal, Mrs. Reiner has presented five assignments of error. On his cross-appeal, Mr. Reiner has presented twelve assignments of error. We will first consider the assignments of error of appellee and cross-appellant, Mr. Reiner.

Appellee and cross-appellant's Assignment of Error 1:

"The trial court committed prejudicial error, when, upon receiving the April 13, 1988 reports of Referee Wayne Strunk, it failed to recuse him, as he had requested, and permitted him to continue to conduct hearings and to make recommendations in the case."

■■■ A court may appoint a referee to hear an issue or issues in a case in which parties are not entitled to a trial by jury. The order of reference to a referee may specify or limit the power of a referee. Subject to any limitations stated in the order of reference, the referee has and shall exercise the power to regulate all proceedings in every hearing before him as if in court. A referee may summon and compel witnesses, require production of evidence, rule on admissibility of evidence, put witnesses under oath, and examine witnesses or parties himself. Civ.R. 53(A), (C).

The Civil Rules are applicable in the juvenile division of a court of common pleas. Civ.R. 1(A). Juv.R. 40 closely parallels Civ.R. 53 in setting forth the duties and powers of a juvenile court referee. Also, as in Civ.R. 53, Juv.R. 40(D) mandates that a referee must file a report with the judge upon the matters submitted by the order of reference. The report must set forth the findings of the referee and make a recommendation as to the judgment order. In addition, a party must include objections as to the referee's factual determinations along with the other objections to a referee's report. Juv.R. 40(D)(6).

A referee does not have the ultimate power to decide a case, but must make a report on the evidence before him with sufficient information to allow the judge to arrive at an independent decision. Juv.R. 40(D)(5).

Under the Constitution of the United States and the Ohio Constitution, every person is guaranteed due process of law. It is a well-settled principle of our judicial system that each litigant is entitled to have his case heard by an impartial and unbiased trier of fact, be it judge, jury or referee. It is clear that if a referee is biased or prejudiced, the report received by the judge will be tainted.

■■■ Although a referee is not a judge, *Eisenberg v. Peyton* (1978), 56 Ohio App.2d 144, 10 O.O.3d 158, 381 N.E.2d 1136, the Judicial Code of Conduct applies where:

"Anyone, whether or not a lawyer, who is an officer of a judicial system performing judicial functions, including an officer such as a referee in bankruptcy, special master, court commissioner, or magistrate, is a judge for the purposes of this Code." See Compliance Section of the Code of Judicial Conduct.

A juvenile court referee is an officer of the judicial system who performs judicial functions as outlined in Civ.R. 53 and Juv.R. 40. The Judicial Code of Conduct, therefore, applies to juvenile court referees.

■ Canon 3 of the Code of Judicial Conduct states that a judge should perform the duties of his office impartially and diligently and sets the following standards:

"(C)(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

"(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

It is therefore evident that where a juvenile court referee is unable to be impartial, he should disqualify himself from the case. See, also, Canons 1 and 2 of the Code of Judicial Conduct.

■ On January 28, 1987, the judge referred this case to the referee pursuant to Juv.R. 40 for ruling on all pending motions and to conduct any needed evidentiary hearings. The referee proceeded to perform his duties as outlined in the order of reference.

However, on April 13, 1988, the referee submitted a report to the judge which stated:

"Plaintiff's handling of this case has included the filing of voluminous pleadings, which have contained substantial amounts of material that has been irrelevant to the issues before the court, as well as spurious allegations of misconduct by every jurist associated with the case. I find that these pleadings have served to intimidate the court and unduly delay a resolution of this case. The continuing unfounded allegations of misconduct warrant citing plaintiff for contempt of court."

In the same report the referee went on to note:

"The plaintiff's allegations of misconduct by this referee made both within and without the pleadings have been so inflammatory as to provoke this referee into considering the pursuit of criminal, civil and ethical remedies against plaintiff, *thereby rendering this referee incapable of presiding at the final evidentiary hearing on this case.*" (Emphasis added.)

The referee then submitted a proposed journal entry removing himself from the case. This entry was never signed by the judge, and the referee proceeded to preside over the case in accordance with the order of reference of January 28, 1987.

■ This court finds, as a matter of law, where a referee affirmatively states that he is biased on the matter before him, it is an abuse of the court's discretion to fail to recuse the referee. *Fessenden v. Fessenden* (1928), 32 Ohio App. 16, 165 N.E. 746.

We, therefore, grant the first assignment of error of cross-appellant.

Cross–Appellant's Assignment of Error 2:

"The trial court committed prejudicial error when it denied a motion filed October 19, 1987, pursuant to then existing Local Juv.R. 9, seeking to have all hearings conducted by a judge of the court."

In 1987, Local Juv.R. 9 read as follows:

"Pursuant to Rule 40 of the Ohio Rules of Juvenile Procedure, Rule 53 of the Ohio Rules of Civil Procedure, and Sections 2151.16 and 2153.08 of the Ohio Revised Code, Referees are empowered and authorized to hear and recommend dispositions on official cases assigned to them as the Court shall direct. When any party requests a hearing by a Judge rather than by the Referee to whom such case was previously assigned, such request shall be granted if made prior to the date originally set for the hearing."

■ On October 19, 1987, Mr. Reiner filed a motion requesting that the judge conduct future hearings in the case rather than the referee. However, in order for Loc.Juv.R. 9 to apply, the motion must be made before the hearing date is set. The referee in his report of October 7, 1987, set a new hearing date for December 28, 1987.

We find this assignment of error to be without merit.

Cross-appellant's Assignments of Error 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 are as follows:

## III

"The trial court committed prejudicial error when it found Mr. Reiner in contempt of court for his failure to appear at a hearing before a referee of the court on December 9, 1988, where service of subpoena was made outside of Ohio."

## IV

"The trial court committed prejudicial error when it found Mr. Reiner in contempt of court for his failure to obey a subpoena to appear at a hearing before a referee of the court on December 19, 1988, without first complying with Ohio Revised Code §§ 2705.02 *et seq.*"

## V

"The trial court committed prejudicial error when it found Mr. Reiner in contempt of court for his failure to fully comply with a previously issued discovery order, and, as a sanction, prohibited his counsel from participating in proceedings before the court on December 19, 1988."

## VI

"The trial court committed prejudicial error when Referee Strunk's hearings on Mrs. Reiner's motions to reduce child support arrearage to lump sum judgment, and to modify a child support order, were conducted *ex parte.*"

## VII

"The trial court committed prejudicial error when it granted Mrs. Reiner's August 20, 1982 motion to modify child support."

## VIII

"The trial court committed prejudicial error when it failed to accord full faith and credit to the child support provisions of the decree of divorce entered by the court of Walker County, 12th Judicial District of Texas, on April 5, 1968."

## IX

"The trial court committed prejudicial error when it found, based upon an order of the Cuyahoga County Juvenile Court entered on August 5, 1968, that Mrs. Reiner was entitled to receive child support for Eric Reiner until he reached age 21 years, and that she was entitled to receive an additional amount for his college expenses, and for the expenses of his graduate school, until age 21 years."

## X

"The trial court committed prejudicial error when it found the amount of the arrearage due by virtue of the court's order of August 5, 1968 to be $46,500.00, and the amount of interest due on the arrearage to be $44,143.88."

### XI

"The trial court committed prejudicial error when it modified the court's child support order of August 5, 1968 to require Mr. Reiner to pay child support of $652.00/month to Mrs. Reiner for the period August 20, 1982 through September 3, 1985."

### XII

"The trial court committed prejudicial error when it modified the court's child support order of August 5, 1968 to require Mr. Reiner to pay Mrs. Reiner as additional child support the amount of $20,874.00 for the college and graduate school expenses of his son, Eric, for the period August 20, 1982 through September 3, 1985."

On December 19, 1988 the referee held his final hearing from which the judge issued his final orders. As detailed in the first assignment of error, as of April 13, 1988 the referee was considering pursuing criminal, civil and ethical remedies against Mrs. Reiner. As a result of this bias we found that the parties did not receive due process of law.

All of the remaining issues of appellee and cross-appellant were heard by the referee after he requested that he be removed from the case. The referee determined that Mr. Reiner was in contempt of court and issued sanctions; the referee modified the child support order; the referee determined that Texas law did not apply; the referee decided the age to which child support should run; he determined the amount of arrearage due; he determined that the amount of child support payments should increase; and the referee found that support for college and graduate school expenses were appropriate.

We find that the referee's report was tainted with bias, and the trial judge could not make an independent and equitable decision based on such a report.

Therefore, these assignments of error are well taken, and are remanded to the trial court for rehearing.

Appellant and cross-appellee's Assignments of Error 1, 2, 3, 4 and 5 are as follows:

### I

"The juvenile court erred and abused its discretion, to the prejudice of mother and son, in refusing to apply appropriate sanction to father for the three contempts it found that he committed."

## II

"The juvenile court erred in its calculations of lump sum child support."

## III

"The juvenile court abused its discretion in denying a mother who is an attorney licensed to practice in Pennsylvania, her reasonable attorney fees, costs of travel and maintenance to prosecute her case, and court costs, when the case has dragged on for over 7 years, and has consumed over five hundred hours of her time *pro se.*"

## IV

"The juvenile court erred in bypassing the referee in ruling upon motions before it which affected mother's and son's substantial rights when some, if not all, the rulings, were prepared for the court by the referee and disguised as 'orders' instead of reports, to deprive mother and son of thousands of dollars in equitable child support."

## V

"The juvenile court erred in denying mother's and son's creditor the right to join the case as an indispensable party plaintiff."

The appellant and cross-appellee's assignments of error 1, 2, 3, 4 and 5 were likewise determined by the referee who clearly stated his bias against the appellant. The referee stated in his report of April 13, 1988 he found appellant's actions had intimidated the court and unduly delayed a resolution of the case. As a result of this intimidation and bias, we found that the parties did not receive due process of law.

All of the issues raised by the appellant were heard by the referee after he stated his bias. The referee decided to hold Mr. Reiner in contempt of court and issued sanctions; he calculated the child support arrearage; he disallowed attorney fees and expenses for Mrs. Reiner; he was integrally involved in all determinations of the judge; and he determined that Mrs. Hudak should not be joined as indispensable party to the action.

We find that the referee's report was tainted with bias, and that the trial judge could not make an independent and equitable decision based on such a report.

Therefore, these assignments of error are well taken and remanded to the trial court for rehearing.

The judgment is affirmed in part and reversed and remanded in part.

*Judgment accordingly.*

DAVID T. MATIA, J., concurs.

KRUPANSKY, C.J., concurs in judgment only.